## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Deborah Hudnall,<br><br>      Plaintiff,<br><br>v.<br><br>The Procter & Gamble Company, an Ohio corporation,<br><br>      Defendant. | Civil Action No. _____ |

## CLASS ACTION COMPLAINT

Plaintiff, Deborah Hudnall ("Plaintiff") individually and on behalf of all others similarly situated, files this Class Action Complaint ("Complaint") against The Procter & Gamble Company ("Defendant") and states and alleges the following:

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiff and all others similarly situated who purchased certain over-the-counter aerosol antiperspirant sprays manufactured, marketed, sold, and distributed by Defendant under the brand names "Old Spice" and "Secret" (collectively "Aerosol Antiperspirant Products"). Several of Defendant's Aerosol Antiperspirant products were shown, through independent testing, to be adulterated with benzene, a known human carcinogen. The presence of benzene in Defendant's Aerosol Antiperspirant Products was not disclosed on the products' labels, in violation of federal law. Plaintiff and the putative class suffered economic damages due to Defendant's misconduct, as set forth below, and they seek injunctive relief and restitution for the full purchase price of the Aerosol Antiperspirant products they purchased.

2.      Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel and, as to other matters, upon information and belief. Plaintiff further believes that substantial evidential support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because this is a civil action in which the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, Plaintiff is a citizen of a state different from Defendant, and the proposed plaintiff class exceeds 100 members.

4.      This Court has jurisdiction over Defendant because Defendant is authorized to conduct and do business in the Commonwealth of Massachusetts. Defendant maintains a significant business presence in the Commonwealth of Massachusetts, including its World Shaving Headquarters in Boston Massachusetts, where employees across all business and technical functions work together on the execution of product initiatives; its Massachusetts Customer Business Center in Boston, Massachusetts, where sales employees form strategic relationships between Defendant and customers; and its Andover Plant, in Andover, Massachusetts, where P&G manufactures its aerosol products. On information and belief, the aerosol products manufactured at the Andover Plant include Aerosol Antiperspirant Products. Defendant further markets, promotes, distributes, and sells products in the State of Massachusetts, and marketed, promoted, distributed, and sold its Aerosol Antiperspirant Products in the Commonwealth prior to recalling them. Defendant therefore has sufficient minimum contacts with this Commonwealth and/or sufficiently avails itself of the markets in this Commonwealth through manufacturing, promotion,

sales, distribution, and marketing within this Commonwealth to render the exercise of jurisdiction by this Court permissible.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)–(b) because a substantial part of the events or omissions giving rise to the claim occurred within this District. Specifically, Defendant, transacted substantial business in this District such as marketing, distributing, and selling Aerosol Antiperspirant Products to consumers, including class members; executing product initiatives across business and technical functions at its secondary United States headquarters; forming strategic relationships with retail customers; and, manufacturing aerosol products including, on information and belief, the Aerosol Antiperspirant Products at issue here.

## PARTIES

6.     Plaintiff Deborah Hudnall resides in Kanawha County, West Virginia and, at all times relevant, has been a resident of the County of Kanawha. Plaintiff purchased Defendant's Aerosol Antiperspirant Products at area retailers and, at the time the Aerosol Antiperspirant Products were recalled, Plaintiff had been using Secret Outlast Protecting Powder Dry Spray. Based on Defendant's false and misleading claims, Plaintiff was never made aware that Defendant's Aerosol Antiperspirant Products may be adulterated with benzene. Plaintiff purchased Defendant's Aerosol Antiperspirant Products on the assumption that the labeling on Defendant's Aerosol Antiperspirant Products was accurate and that the products were unadulterated, safe, and effective. Plaintiff would not have purchased Defendant's Aerosol Antiperspirant Products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff suffered an injury-in-fact when she spent money to purchase products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

7.     Defendant The Procter & Gamble Company is a corporation incorporated in the State of Ohio with its principal place of business at 1 P&G Plaza, Cincinnati, Ohio 45202. Defendant is one of the world's leading manufacturers of personal care products, earning $76.1 billion in net sales, with 9% of this amount attributable to Defendant's "grooming" business segment in 2021.[1] Defendant manufactures, sells, markets, and distributes its Aerosol Antiperspirant Products, including the adulterated Aerosol Antiperspirant Products throughout the United States. Defendant's line of Aerosol Antiperspirant Products, including the adulterated Aerosol Antiperspirant Products purchased by Plaintiff and members of the putative class are available at retail stores throughout the United States.

## FACTUAL ALLEGATIONS

8.     Defendant manufactures, labels, markets, advertises, distributes, and sells a variety of Aerosol Antiperspirant Products, including aerosol antiperspirants sold under the brand names "Old Spice" and "Secret."

9.     On November 3, 2021, the independent analytical laboratory Valisure, LLC ("Valisure") filed a Citizen Petition with the Food and Drug Administration (FDA) asking the FDA to recall certain batches of Defendant's Aerosol Antiperspirant Products due to the presence of benzene detected therein in excess of the recommended exposure limits. Benzene is a known human carcinogen[2] with exposure routes including "skin absorption" and "inhalation."[3] There is

---

[1]  Procter & Gamble, *Financial Highlights*, https://us.pg.com/annualreport2021/financial-highlights/.
[2]  National Toxicology Program, Department of Health and Human Service, *Report on Carcinogens, Fourteenth Edition: Benzene* (Nov. 3, 2016), https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf.
[3]  Centers for Disease Control and Prevention, *NIOSH Pocket Guide to Chemical Hazards: Benzene*, https://www.cdc.gov/niosh/npg/npgd0049.html.

no *safe* level of benzene exposure,[4] however, the National Institute of Occupational Safety and Health (NIOSH) has set a recommended exposure limit of 0.1 ppm.[5]

10.     In support of its Citizen Petition, Valisure stated that it performed testing on aerosol antiperspirant sprays manufactured by various brands and sold by various retailers—including numerous lots of Defendant's Aerosol Antiperspirant Products. Valisure reported that all of the tested Aerosol Antiperspirant Products sold under the brand name "Secret" contained benzene, with values ranging from 1.24 ppm to 16.2 ppm and that many of the Aerosol Antiperspirant Products sold under the brand name "Old Spice" contained benzene, with values ranging from 0.44 ppm to 17.7 ppm.

11.     Benzene is not listed as an active or inactive ingredient on any of the labels on Defendant's Aerosol Antiperspirant Products.

12.     Valisure requested that the FDA recall all batches of Defendant's Aerosol Antiperspirant products that (as tested) contained 0.1 ppm or more of benzene, on the basis that they are adulterated under section 501 of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 351 and misbranded under Section 502 of the FDCA, 21 U.S.C. § 352.

13.     On November 23, 2021, Defendant initiated a voluntary recall of its Aerosol Antiperspirant Products "due to the presence of benzene detected."[6]

---

[4] World Health Organization, *Exposure to Benzene: A Major Public Health Concern*, at 2 (2010) https://www.who.int/ipcs/features/benzene.
[5] Centers for Disease Control and Prevention, *NIOSH Pocket Guide to Chemical Hazards: Benzene*, https://www.cdc.gov/niosh/npg/npgd0049.html.
[6] U.S. Food and Drug Administration, *P&G Issues Voluntary Recall of Specific Old Spice and Secret Aerosol Spray Antiperspirants and Old Spice Below Deck Aerosol Spray Products Due to Detection of Benzene*, (Nov. 23, 2021), https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/pg-issues-voluntary-recall-specific-old-spice-and-secret-aerosol-spray-antiperspirants-and-old-spice.

14. Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and in the intermediate synthesis of numerous chemicals, and in gasoline. The major source of benzene in the United States is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program, benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[7] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer (IARC).[8] Benzene was "[f]irst evaluated by the IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[9] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence . . . The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[10]

---

[7] National Toxicology Program, Department of Health and Human Service, *Report on Carcinogens, Fourteenth Edition: Benzene* (Nov. 3, 2016), https://ntp.niehs.nih.gov/ntp/roc/content/profiles/benzene.pdf.
[8] IARC Monographs, *Benzene*, 33 (2018).
[9] *Id.*
[10] *Id.* at 34.

Likewise, the FDA recognizes that benzene is a "carcinogen" and classifies it as a Class I solvent that "should be avoided" and "should not be employed in the manufacture of drug substances, excipients, and drug products."[11]

15.     All of Defendant's Aerosol Antiperspirant Products are marketed and advertised as "antiperspirants." The FDA regulates antiperspirants, including the Aerosol Antiperspirant Products at issue here, as over-the-counter drugs, rather than cosmetics.[12] The FDA defines an antiperspirant as a "drug product applied topically that reduces the production of perspiration (sweat) at that site."[13] As an FDA-regulated product, antiperspirants must pass certain tests before they are sold.

16.     Per the FDA regulations governing Defendant's Aerosol Antiperspirant Products, there are certain acceptable active ingredients in products that may be labeled as antiperspirants. Benzene, recognized by the FDA as a carcinogen,[14] is *not* on the FDA's list of acceptable active or inactive ingredients for antiperspirants.[15]

17.     Benzene is not identified as an active or inactive ingredient on any of Defendant's Aerosol Antiperspirant Products, and Defendant proclaims that "we do not use" benzene as an ingredient "in any of our formulated products,"[16] which is a false and misleading statement.

18.     The governing regulations provide: "An over-the-counter antiperspirant drug product in a form suitable for topical administration is generally recognized as safe and effective

---

[11] Food and Drug Administration, *Q3C–Tables and List Guidance for Industry*, at 5 (2017) https://www.fda.gov/media/71737/download.
[12] 21 C.F.R. §§ 350.3, 350.10.
[13] 21 C.F.R. § 350.3.
[14] Food and Drug Administration, *Q3C–Tables and List Guidance for Industry*, at 5 (2017) https://www.fda.gov/media/71737/download.
[15] 21 C.F.R. §§ 350.3, 350.10.
[16] P&G, *Ingredients We Do Not Use*, https://us.pg.com/ingredients/.

and is not misbranded if it meets each condition in this part and each general condition established in § 330.1 of this chapter."[17] Defendant failed to meet this standard as further described herein.

19. The manufacture of any misbranded or adulterated drug is prohibited under federal law.[18]

20. The introduction into commerce of any misbranded or adulterated drug is prohibited under federal law.[19]

21. The receipt in interstate commerce of any adulterated or misbranded drug is likewise unlawful.[20]

22. Among other reasons, a drug may be adulterated if "it consists in whole or in part of any filthy, putrid, or decomposed substance . . . or whereby it may have been rendered injurious to health."[21]

23. Among other reasons, a drug may be misbranded if:

    a. Its "labeling is false or misleading in any particular."[22]

    b. The labeling does not contain, among other things, "the proportion of each active ingredient[.]"[23]

---

[17] 21 C.F.R. § 350.1.
[18] 21 U.S.C. § 331(g).
[19] 21 U.S.C. § 331(a).
[20] 21 U.S.C. §331(c).
[21] 21 U.S.C. § 351 (a)(1); *see also* Mass. Gen. Laws, Ch. 94, § 186 ("For the purposes of this chapter, an article shall be deemed adulterated . . . if it consists in whole or in part of any filthy, putrid, or decomposed substance . . . or whereby it may have been rendered injurious to health.")
[22] 21 U.S.C. § 352(a)(1); *see also* Mass. Gen. Laws, Ch. 94, § 187 ("The term 'misbranded' as used in this chapter shall apply to each drug . . . which bears any statement, design, or device regarding such article or the ingredients or substance contained therein, which is false or misleading in any particular.").
[23] 21 U.S.C. § 352(e)(A)(1)(ii).

    c. It "is dangerous to health when used in the dosage manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[24]

24. Defendant did not disclose that benzene, a known human carcinogen,[25] may be present in the Aerosol Antiperspirant Products purchased by Plaintiff and the putative class members. As a result, its Aerosol Antiperspirant Products are adulterated and misbranded There is "no safe level of benzene" exposure,[26] so it is unsuitable for human application as an ingredient in any antiperspirant.

25. Defendant wrongfully advertised and sold the Aerosol Antiperspirant products without any labeling to indicate to consumers that these products may contain benzene. The image on the following page shows an example of Secret Outlast Protecting Powder Dry Spray, one of the Aerosol Antiperspirant Products used by members of the putative class and the Aerosol Antiperspirant Products used by Plaintiff, specifically:

---

[24] 21 U.S.C. § 352(j); *see also* Mass. Gen. Laws, Ch. 94, § 187 ("an article shall also be deemed to be misbranded . . . if it is dangerous to health when used in the dosage or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.").
[25] World Health Organization, *Exposure to Benzene: A Major Public Health Concern*, at 2 (2010) https://www.who.int/ipcs/features/benzene.pdf.
[26] *Id.*





26. In addition, Defendant maintains a webpage identifying active and inactive ingredients in its products, but does not identify benzene as an ingredient in any of its Aerosol Antiperspirant Products.[27]

27. In fact, Defendant affirmatively promises consumers that benzene is one of the materials "we do not use as ingredients in any of our formulated products" including the Aerosol Antiperspirant Products.[28]



28. Plaintiff has standing to represent members of the putative class because there is sufficient similarity between the specific Aerosol Antiperspirant Products purchased by Plaintiff and the other Aerosol Antiperspirant Products not purchased by Plaintiff. Specifically, each and

---

[27] *See*, *e.g.*, SmartLabel, *Secret Outlast Dry Spray Antiperspirant Deodorant Completely Clean Scent*, https://smartlabel.pg.com/00037000723684.html; SmartLabel, *Old Spice Sweat Defense Dry Spray Anti-Perspirant Deodorant 48 Hour Stronger Swagger*, https://smartlabel.pg.com/00037000730347.html.

[28] P&G, *Ingredients We Do Not Use*, https://us.pg.com/ingredients/.

every one of Defendant's Aerosol Antiperspirant Products (i) are marketed in substantially the same way—as "Antiperspirant"—and (ii) fail to include labeling indicating to consumers that the Aerosol Antiperspirant Products may contain benzene as an active or inactive ingredient. Accordingly, the misleading effect of all the Aerosol Antiperspirant Products is substantially the same.

29.     Plaintiff references federal law in this Complaint not in any attempt to enforce it, but to demonstrate that her state-law tort claims do not impose any additional obligations on Defendant, beyond what was already required of it under federal law.

## CLASS ALLEGATIONS

30.     Plaintiff brings this action on behalf of herself and all other similarly situated class members ("Class") pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), and seeks certification of the following class against Defendant for violations of state laws:

> A       ll consumers who purchased any Aerosol Antiperspirant Product sold under the name brand "Secret" and/or "old Spice" in the United States of America and its territories from November 4, 2017 to the present for personal use of consumption.
>
> Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Defendant's Aerosol Antiperspirant Products. Also excluded from this class are Defendant, any parent companies, subsidiaries, affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

31.     The members of this Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of

purchasers of Defendant's Aerosol Antiperspirant Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

32. Plaintiff's claims are typical to those of all Class members because members of the Class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied Defendant's Aerosol Antiperspirant Products sold under the name brands "Secret" and "Old Spice." Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

33. Plaintiff's claims raise questions of law and fact common to all members of the Class and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include:

    a. Whether Defendant's Aerosol Antiperspirant Products contained benzene;

    b. Whether Defendant's omissions are true, or are misleading, or are objectively likely to deceive a reasonable consumer;

    c. Whether the alleged conduct constitutes violations of the laws asserted;

    d. Whether Defendant's alleged conduct violates public policy;

    e. Whether Defendant engaged in false or misleading advertising;

    f. Whether Defendant was unjustly enriched as a result of its labeling, marketing, advertising, and/or selling of the Aerosol Antiperspirant Products; and

    g. Whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss.

34. Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the Class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

35. A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

36. The Class also may be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

37. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, requiring Defendant to provide a full refund of the purchase price of the Aerosol Antiperspirant Products to Plaintiff and Class members.

38.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and the Class members.

## COUNT I

### Unjust Enrichment

39.     Plaintiff incorporates by references and realleges each and every allegation contained above, as though set forth fully herein.

40.     As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by Plaintiff and members of the Class when they purchased the Aerosol Antiperspirant Products.

41.     In doing so, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

42.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

43.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

44.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received without justification from the false and deceptive labeling and marketing of the Aerosol Antiperspirant Products to Plaintiff and members of the Class.

45.     Defendant's retention of such funds under circumstances making it inequitable to do so constitute unjust enrichment.

46. The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class.

47. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

48. Finally, Plaintiff and members of the Class may plead an unjust enrichment claim even though a remedy at law may otherwise exist.[29]

## COUNT II

## Breach of Implied Warranty

49. Plaintiff incorporates by reference and realleges each and every allegation contained above as though set forth fully herein.

50. Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Aerosol Antiperspirant Products. Defendant knew or had reason to know of the specific use for which its Aerosol Antiperspirant Products were purchased, that is, for use as "antiperspirants."

51. At the time Defendant marketed, sold, and otherwise placed its Aerosol Antiperspirant Products into the stream of commerce, it knew of the particular purchase for which Plaintiff and the Class members purchased the Aerosol Antiperspirant Products, that is, to have a safe and effective antiperspirant which did not contain any human carcinogens.

52. Defendant also knew that consumers, including Plaintiff and members of the Class would have no ability or opportunity to determine the ingredients in the Aerosol Antiperspirant Products, but instead would rely on Defendant's representations that the Aerosol Antiperspirant

---

[29] See, e.g., Durbeck v. Suffolk Univ., --- F. Supp. 3d ---, 2021 WL 2582621, at *12, Slip Copy (D. Mass. June 23, 2021).

Products were suitable for their particular purpose, and free of human carcinogens including, specifically, benzene.

53.     At all times, Plaintiff and the Class members used the Aerosol Antiperspirant Products in the manner that was intended for use.

54.     Defendant provided Plaintiff and Class members with an implied warranty that its Aerosol Antiperspirant Products were merchantable and fit for the ordinary purpose for which they were sold and were not dangerous or hazardous to users' health.

55.     Further, as the intended consumers and ultimate users of the Aerosol Antiperspirant Products, Plaintiff and the Class members are intended third-party beneficiaries of any contracts between Defendant and any retailers from whom Plaintiffs obtained Aerosol Antiperspirant Products, which contain the implied warranty of merchantability and to be fit for ordinary purposes, safe, and not hazardous to users' health. Plaintiff and the Class members, not any retailers, are the parties intended to benefit by any such contract because they are the people using the Aerosol Antiperspirant Products in the manner intended.

56.     In breach of the implied warranty of merchantability, the Aerosol Antiperspirant Products that Defendant provided to Plaintiff and the Class members are not fit and suitable for their ordinary purpose because, among other things, they contain dangerous human carcinogens with the potential of causing serious injury and death. Defendant's Aerosol Antiperspirant Products supplied to Plaintiff and the Class members did not possess the basic degree of fitness for ordinary use due to the defects described herein. The defects are so basic that they render the Aerosol Antiperspirant Products unfit for their ordinary purposes. As such, they are not merchantable.

57.     As a direct and proximate result of Defendant's breach, Plaintiff and the class members have suffered, and will continue to suffer, significant damages, loss, and injury, in an amount that will be established at trial.

58.     Plaintiff and the Class members are entitled to legal and equitable relief against Defendant, including consequential damages, recission, attorney's fees, costs of suit, and other relief as appropriate.

## COUNT III

## Breach of Express Warranty

59.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though set forth fully herein.

60.     Plaintiff and each Class member formed a contract with Defendant at the time Plaintiff and the other Class members purchased Defendant's Aerosol Antiperspirant Products. The terms of the contract include the promises and affirmations of fact made by Defendant on the packaging of its Aerosol Antiperspirant Products and through marketing and advertising, including specifically the promise that benzene is one of the materials that "we do not use as ingredients in any of our formulated products."[30] This labeling, marketing, and advertising constitute express warranties. This labeling, marketing, and advertising became part of the basis of the bargain, and are part of the standardized contract Defendant entered into with Plaintiff and with each Class member.

61.     Defendant expressly warranted that its Aerosol Antiperspirant Products were fit for their ordinary use, that is, as a safe and FDA-compliant product suitable for human application

---

[30] P&G, *Ingredients We Do Not Use*, https://us.pg.com/ingredients/.

"that reduces the production of perspiration (sweat) at that site."[31] It also expressly warranted that its Aerosol Antiperspirant Products were not adulterated or misbranded.

62.     Defendant's Aerosol Antiperspirant Products did not conform to Defendant's express representations and warranties because they were not manufactured in compliance with FDA standards, were not suitable for human application, and were adulterated and misbranded.

63.     At all times relevant, the following States and Territories have codified and adopted the provisions of the Uniform Commercial Code: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313 and Wyo. Stat. § 34.1-2-313.

---

[31] *See* 21 C.F.R. § 350.3.

64. At the time Defendant marketed and sold its Aerosol Antiperspirant Products, it recognized the purposes for which the products would be used and expressly warranted that the products were suitable for human application, FDA-compliant, and not adulterated or misbranded. These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and each Class member, including but not limited to the express representation Defendant made that benzene is not an ingredient used in any of its products.

65. Plaintiff and each Class member are natural persons who are reasonably expected to use, consume, and/or be affected by the adulterated and misbranded Aerosol Antiperspirant Products manufactured and sold by Defendant.

66. Defendant breached its express warranties with respect to its Aerosol Antiperspirant Products because the products were not suitable for human application, did not comply with FDA standards, and were adulterated and misbranded.

67. Plaintiff and each Class member would not have purchased the Aerosol Antiperspirant Products had they known the products contained benzene, were not suitable for human application, did not comply with FDA standards, and/or were adulterated and misbranded.

68. As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and other class members have been injured and suffered damages in the amount of the purchase price of their Aerosol Antiperspirant Products and any consequential damages resulting from their purchases, in that the Aerosol Antiperspirant Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, prays for judgment against Defendant as to each and every count, including:

69.     An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

70.     An order enjoining Defendant from suggesting or implying that the Aerosol Antiperspirant Products are safe and effective for human application;

71.     An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

72.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

73.     An order requiring Defendant to disgorge any ill-gotten benefits received from Plaintiff and members of the Class as a result of any wrongful or unlawful act or practice;

74.     An order requiring Defendant to pay appropriate damages for breach of implied warranties;

75.     An order requiring Defendant to pay appropriate damages for breach of express warranties;

76.     An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

77.     An order awarding attorneys' fees and costs to Plaintiff and the Class; and

78.     An order providing for all other such equitable relief as may be just and proper.

### DEMAND FOR JURY TRIAL

79.     Plaintiff demands a trial by jury on all issues so triable.

Dated: December 16, 2021        Respectfully submitted,

ROBINS KAPLAN LLP


*/s/ Pamela E. Berman*
Pamela E. Berman (BBO No. 551806)
Robins Kaplan, LLP
800 Boylston Street – 25th Floor
Boston, MA 02199
(617) 267-2300
Email: PBerman@robinskaplan.com


*Attorney for Plaintiff Deborah Hudnall*


## CERTIFICATE OF SERVICE

I, Pamela E. Berman, hereby certify that on this day, I electronically filed the within document with the Clerk of the Court using the CM/ECF system that will send notification of such filing(s) to all counsel of record. The document is available for viewing and downloading through the ECF system.

Dated: December 16, 2021        */s/ Pamela E. Berman*
                                                    Pamela E. Berman

92336997.1